## Kelley v. Bicknell, et al.

(Decided March 7, 1912.)

## Appeal from Estill Circuit Court.

Land—Action for Trespass—Adverse Possession—Evidence not Sufficient to Establish.—In an action for trespass to land, evidence examined and held that it shows a want of title or right of possession. The sporadic cutting of timber for fence posts as far back as 1857, and again in the sixties, cannot be accepted as such acts of ownership as rise to the dignity of adverse holding.

RIDDELL & FRIEND for appellant.

R. W. SMITH, KELLEY KASH for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In January, 1907, S. B. Kelley instituted a suit in the Estill Circuit Court against Virgil Bicknell and Godfrey Isaacs, in which he alleged that he was the owner of a certain boundary of land, containing thirty-five acres, upon which the defendants had entered and cut timber to his damage. He asked that they be enjoined from committing further trespass thereon and that he recover damages for the trespasses theretofore committed. The defendants answered, claiming title in themselves to the land in question, and specifically denied that plaintiff was the owner or in the possession or entitled to the possession of the land described in his petition, upon which trespasses were alleged to have been committed. The pleadings were finally made up in April, 1909, when plaintiff traversed the affirmative matter in the answer. The question at issue was thereafter submitted to a jury for its determination, and the jury found in favor of the defendant. A motion for a new trial was overruled and judgment entered upon the verdict. The plaintiff appeals.

Plaintiff claimed ownership of said land through certain title bonds and also by adverse possession. Defendants rest their claim upon adverse possession. The evidence is very conflicting, but we are satisfied that plaintiff utterly failed to show himself to be the owner of said property by virtue of any paper title which he exhibited. Evidently realizing this, his counsel directed practically all of his efforts towards establishing a claim by adverse possession. In the instructions, how-

ever, under which the case was submitted to the jury, the court authorized a recovery on the part of plaintiff if the jury believed from the evidence that the land in question was covered by the paper titles exhibited by plaintiff, or that he had held same to a well-defined or marked exterior boundary line for more than fifteen years before the institution of the suit.

The land in dispute is on the top of a mountain and is surrounded by a cliff or ledge of rock with a few gaps in it. There was nothing, as developed by the evidence, done by plaintiff or his vendors at any time reasonably calculated to put anyone upon notice that he was claiming the land. True, he says that his cattle grazed upon it at times and that he cut some brush and put into the gaps, and that on two or three occasions posts were cut upon this land or portions of it under the direction of his vendor. But it is not shown by those who cut the posts that appellant's vendor was then claiming the land, although he did direct the witness who testifies as to cutting the posts to get them off of this land. He might have done so as a trespasser. The occasional cutting of timber, however, from land is no evidence of an adverse holding, or that the party cutting it or having it cut is claiming it adversely.

These were the most pronounced acts indicating adverse possession that are developed by the evidence. It was timbered land, and there is no pretense that any part of it was ever cleared or occupied or used in any way, except that the cattle of appellant and his vendor at certain seasons of the year grazed over a portion of it. The same might be said of any of the wild land in that locality. It is common knowledge that in the early days but little of this land was under fence, and cattle roamed at will. So, too, timber was plentiful and of little value, and the sporadic cutting of fence posts, as far back as 1857, and then again in the early sixties, and perhaps on one occasion since, cannot be accepted as such acts of ownership as rise to the dignity of evidence of adverse holding. Believing that the jury reached a proper conclusion, the judgment is affirmed.