## Miller v. Cumberland Petroleum Co. et al.

(Decided May 25, 1937.)

W. E. AUD and J. R. HIGDON for appellant.

O. L. FOWLER, JOHN A. NEEDING, A. D. KIRK and CLARENCE BARTLETT for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

The Cumberland Petroleum Company and the Kemrow Company, who held an oil lease on a lot 40 feet square located near Oaks Station in Ohio county, brought this suit against M. W. Miller and H. C. Gardenhire to enjoin them from trespassing on the lot, and from interfering with the development of the lease. Miller filed an answer and counterclaim claiming ownership of the lot, and Gardenhire asserted his right to enter upon the premises by virtue of a lease executed to him by Miller. The trustees of the East Fork Baptist Church intervened and asserted ownership by deed, and also by adverse possession. On final hearing the chancellor adjudged that the lot in controversy belonged to the trustees of the church, and enjoined Miller and Gardenhire from interfering with its development. Miller has appealed.

The admitted facts may be summarized as follows: The lot in controversy was conveyed to Wiley M. Johnson by Mason L. Jones and wife on December 2, 1891. On September 27, 1894, Wiley M. Johnson conveyed the lot to A. R. Oller. On September 27, 1897, Oller sold the lot to appellant, Miller, and J. W. Peckenpaugh. Peckenpaugh sold his interest in the lot to appellant, Miller, by deed dated September 19, 1934. During the ownership of Johnson and Oller, they operated a blacksmith's shop on the property. During the ownership of Miller and Peckenpaugh, they operated a grist mill on the property. During the year 1904, the machinery and building were removed from the lot. After that, Miller and Peckenpaugh did not occupy the property. On the other hand, M. L. Jones and wife, appellant's predecessors in title, conveyed the church lot to the trustees of the church by deed dated December 22, 1894. In other words, the church and appellant derived their titles from a common grantor, and the conveyance of the trustees of the church was not made until three years after the conveyance to Wiley M. Johnson, appellant's predecessor in title. The deed to the trustees of the church does not include the lot in controversy, and the lot adjoins the church lot on its extreme southwest. The entire church lot, including the lot in controversy, has been inclosed by fences on three sides, and by the public road on the other side, for about 40 years.

From the foregoing, it will be seen that the legal

title to the lot is in Miller, and the only question for consideration is whether the trustees of the church acquired title by adverse possession? On this question the evidence for the church is as follows: After the mill building and machinery were removed, the members of the congregation cleaned up the lot, filled up the well used in connection with the mill, and occasionally trimmed the small shade trees growing on the lot. Now and then, when the weather permitted, Sunday school services were held on the lot, and dinners were spread under the shade of the trees when all-day meetings were held. The members also hitched their horses and parked their cars under the trees. On the other hand, the evidence for appellant is that the lot in controversy was never used in any manner by the members of the congregation, except on rare occasions and at long intervals, and that the ownership of the lot was never discussed by the officers or the members of the church.

If this were a case where after Miller had vacated the premises, the church had inclosed the Miller lot with its own lot, a different question would be presented. However, that is not the case. The evidence discloses that the fences are exactly where they were before the grist mill and machinery were removed. In the circumstances, the old inclosure did not have the effect of starting the statute of limitations as to the Miller lot to which the trustees of the church had no title whatever. The only way that they could acquire title by adverse possession was to enter upon the Miller lot and hold it adversely for fifteen years. Kentucky Union Co. v. Cornett, 248 Ky. 360, 58 S. W. (2d) 655. To do this, it was necessary that the possession be actual, open, notorious, exclusive, hostile, and continuous for that period. To that end there must have been such open and notorious acts of physical possession as would put the owner upon notice of the assertion of a hostile claim, Whitley County Land Co. v. Powers' Heirs, 146 Ky. 801, 144 S. W. 2, and such possession must have been so continued as to furnish a cause of action every day during the whole period, Campbell v. Thomas, 9 B. Mon. 82. Hence the rule that the mere building of an unoccupied cabin on the land, or the masting of hogs, or the ranging of cattle thereon, or the conducting of a sugar camp, at intermittent periods, or the occasional cutting of timber therefrom, is not sufficient to show adverse possession. H. F. Davis & Co. v. Sizemore, 182

528

Ky. 680, 207 S. W. 16; Courtney v. Ashcraft, 105 S. W. 106, 31 Ky. Law Rep. 1324; Hall v. Blanton, 77 S. W. 1110, 25 Ky. Law Rep. 1400; Muse v. Payne, 144 Ky. 30, 137 S. W. 788; Kelley v. Bicknell, 147 Ky. 401, 144 S. W. 88; Smith v. Chapman, 160 Ky. 400, 169 S. W. 834. In the case under consideration, very few of the alleged acts of possession took place during the winter, but they occurred during the summer time, when the members of the congregation wished to avail themselves of the shade trees, and then only at rare intervals. The owner of a lot adjoining the church lot, who drove by the church, or attended its services, would hardly think that the members of the congregation, who, because of the shade, occasionally used his lot for worship or picnic purposes, or for the purpose of hitching their horses or parking their automobiles, were actually claiming his lot. We are therefore constrained to hold that, considered in the light of the location of the lot with respect to the lot to which the church did have title, the acts of possession were too sporadic and too friendly in their character to indicate a hostile claim. It follows that appellant and not the trustees of the church should have been adjudged the owner of the lot.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.